NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

# TAX COURT OF NEW JERSEY



KATHI F. FIAMINGO
JUDGE

120 High Street
Mount Holly, NJ 08060
(609) 288-9500 EXT 38303

July 29, 2021

VIA eCourts
Gregory B. Pasquale, Esq.
Shain Schaffer PC
Attorney for defendant

VIA eCourts
Thomas J. Denitzio, Jr., Esq.
Greenbaum, Rowe, Smith & Davis LLP
Attorneys for plaintiff

> Re:  Somerset Elizabeth III LLC vs Franklin Township
> Docket Nos. 005827-2018; 006751-2019; 001509-2020

Dear Counsel:

This letter constitutes the court's opinion with respect to plaintiff's motion to bar witness testimony, to bar the admission of documents, and limit expert testimony. For the reasons explained more fully below, the plaintiff's motion is denied.

I.     Procedural History and Finding of Fact

Somerset Elizabeth III LLC ("plaintiff") is the owner of a commercial property identified as Lot 1.02 in Block 507.15 on the Franklin Township tax map, and more commonly known as 441 Elizabeth Avenue, Franklin Township, NJ ("subject property"). Plaintiff timely filed direct






appeals of the tax assessments for 2018, 2019 and 2020 with the Tax Court. Franklin Township ("defendant") filed a counterclaim for tax year 2020 only[1].

During the course of discovery, plaintiff served demands for answers to standard interrogatories on the defendant for the 2018 and 2020 years[2]. The first interrogatory requested the names and addresses of "each person known to the municipality who has knowledge of the facts bearing upon or relating to this appeal or the subject property." Defendant's response included only the name of its tax assessor. The fifth interrogatory requested a copy of any document "of which the municipality has knowledge and which relates to or bears upon the subject matter of this appeal." In response defendant provided a copy of the property record card and plaintiff's responses to the assessor's demand for income and expense information pursuant to N.J.S.A. 54:4-34 ("chapter 91"). Defendant "reserve[d] the right to supplement this response in accordance with the exchange dates established by the Court." No amendments to any interrogatory answer were made as of the time of this motion hearing.[3]

In or about September 2019 defendant requested that plaintiff provide a preliminary appraisal report in order that settlement discussions could be facilitated. On or about February 9, 2020 plaintiff provided an appraisal report "for settlement discussion purposes only."[4] The parties engaged in settlement discussions however no agreement could be reached.

---

[1] The court notes that the appeal for the 2020 tax year was filed on February 28, 2020 and the counterclaim was filed on May 22, 2020. It appears therefor that the counterclaim is out of time. See R.8:4-3(a)(Counterclaims in direct appeals mut be filed on or before April 1, unless the complaint is filed on April 1 or 19 days next preceding April 1.)

[2] No interrogatories were served for the 2019 tax year.

[3] Defendant did serve plaintiff with its expert's appraisal report as required by the court's case management orders issued in this matter.

[4] The report valued the subject property as of October 1, 2017 only.

Thereafter, the court issued case management orders providing deadlines for exchange of appraisal reports, witness and exhibit lists, and setting the matters down for trial. Defendant submitted its witness list which included the name of a witness whose name was not previously identified in any answer to interrogatories. Defendant's exhibit list included a document identified as "blanket mortgage" purportedly encumbering the subject property and other property owned by plaintiff as well as the preliminary appraisal report provided by plaintiff for settlement discussions. Neither document had been previously identified in response to any interrogatory served by plaintiff.

On May 12, 2021, plaintiff filed the within motion, seeking to bar the testimony of defendant's witness, to bar the use of both the mortgage and the preliminary appraisal report and to limit defendant's expert's testimony to the facts and analysis disclosed in his appraisal report. Defendant filed opposition and the court heard oral argument. For the reasons placed on the record the court ruled that it would permit the testimony of the witness identified by defendant, granting plaintiff time to depose the witness prior to trial. The court also ruled that it would not pre-determine the testimony to be permitted by defendant's expert but would hear appropriate objections and argument during trial. The court reserved on the issue of the use of plaintiff's expert preliminary appraisal report for the purpose of impeaching the expert's testimony at trial. As set forth below, the court denies plaintiff's motion to bar defendant's use of the preliminary appraisal report for the purpose of cross-examination of plaintiff's expert.

II.     Conclusions of Law

As to the use of the expert report provided by plaintiff to defendant "for settlement discussion purposes," plaintiff first argues that defendant did not identify that document as one upon which it intended to rely on in its responses to interrogatories and did not amend its answers

3

at any time prior to producing its pre-marked exhibits.[5]  Initially, the court notes that the standard interrogatories served upon defendant do not demand that defendant produce all documents "upon which it intends to rely at trial."  The only applicable interrogatory is interrogatory #5, which demands that defendant produce "each document of which the municipality has knowledge and which relates to or bears upon the subject matter of this appeal."  In its responses to both the 2018 and 2020 interrogatories served upon it, defendant identified only the property record card for the subject property and the assessor's "complete file."  The defendant reserved the right to amend its answers but did not do so.[6]  See R. 4:17-7 (if a party furnishing answers to interrogatories obtains information that renders such answers incomplete or inaccurate, amendments are to be served.)

The court further notes that the preliminary appraisal report in question relates solely to the value of the subject property as of October 1, 2017 and thus, relates only to the 2018 tax year appeal.  The discussion as to the use of the preliminary appraisal report is necessarily limited to that single year under appeal.

Plaintiff first argues that defendant had been in possession of the report since January 2020 when plaintiff produced the report for settlement discussion purposes, but defendant did not amend its responses to interrogatories to include the report.  Clearly plaintiff is not surprised that the defendant has knowledge of the report provided by plaintiff to defendant.  Thus, its argument that defendant failed to amend its answers to interrogatories to include a document produced by plaintiff and delivered to defendant is unavailing.[7]

---

[5] Plaintiff acknowledges that it did not serve interrogatories upon defendant for the 2019 tax year appeal.  This discussion therefore relates solely to the 2018 and 2020 tax year appeals.

[6] The answers to the standard interrogatories served for the 2018 tax year were sent to plaintiff in June 2018, some 18 months prior to the date of the preliminary appraisal report

[7] In this regard the court rejects plaintiff's complaint that defendant failed to identify the document as one it intended to rely upon at trial.  The standard interrogatories served upon defendant do not

Plaintiff next argues that to permit defendant to utilize the report provided for settlement purposes to impeach plaintiff's expert would cast a chilling effect on the use of such reports for settlement in the future. Defendant's response that plaintiff was not required to submit such a report is disingenuous at best. Plaintiff only provided a report to discuss settlement because defendant refused to do so without one.

Nonetheless, plaintiff's reference to R. 8:6-8 as support for its argument is unavailing. That Rule provides in pertinent part,

> [i]n all local property tax cases assigned to the standard track, the parties shall hold a mandatory settlement conference …. Counsel for all parties and the assessor or the taxing district's appraisal consultant shall be present at the mandatory settlement conference …. At least seven (7) days prior to the date fixed for the mandatory settlement conference, *plaintiff's counsel must furnish* to defendant's counsel *an appraisal by plaintiff's appraisal expert* in the form specified by the court *or a demand for reduction* in assessment with support therefor.
>
> [R. 8:6-8 (emphasis added).]

The court records demonstrate that the case management plan issued for the 2018 tax year provided that the mandatory settlement conference was to be held by May 2019. The court records further demonstrate that counsel for the parties filed a mandatory settlement conference report on June 27, 2019 indicating that the conference had been held. Thus, that conference occurred some three months prior to the engagement of the expert who prepared referenced preliminary report.[8] It is clear that plaintiff did not obtain the report to facilitate the mandatory settlement conference and plaintiff's suggestion that the report was prepared for those purposes is rejected, at least as

---

pose this question and no supplemental interrogatory demanding such a response was served upon defendant for any of the years under appeal.

[8] Correspondence to the court from plaintiff's counsel dated September 30, 2019 indicates that the expert had not yet been retained.

respects the 2018 tax year, the only year impacted by the preliminary report at issue. The parties do not provide the documentation that was furnished to defendant's counsel in anticipation of the mandatory settlement conference for the 2018 tax year, but it is clear that the report at issue was not provided, as it was not completed until at least January 30, 2020, well after the mandatory settlement conference was held.[9]

The court appreciates plaintiff's argument that permitting the use of a preliminary report at trial which was required by defendant to facilitate settlement discussions may have a chilling effect on the taxpayers' willingness to do so and therefore on settlements. The truth of the matter is, however, that such reports are not required to be produced. Plaintiff could well have refused to do so. While settlements are certainly favored, they are not required. Settlement discussions in the matter before the court could have been, and in light of the mandatory settlement conference report filed, apparently were, undertaken without the benefit of an appraisal report. Plaintiff was not required to accede to defendant's request to produce a unilateral report but chose to do so.[10]

Plaintiff refers to R. 8:6-1(b)(1)(i) as further support for its position that the preliminary report is solely for the purpose of facilitating meaningful settlement efforts. The cited rule indicates that "[t]he submission of this written appraisal report is in addition to the requirement that plaintiff's counsel furnish an appraisal or a demand for reduction in assessment with support therefore to counsel for defendant pursuant to R. 8:6-8." Nothing in the rule anticipates that the report which may be provided for settlement purposes will be different from that to be produced for trial, or that the report provided for settlement purposes may not be used during permissible

___

[9] In the brief submitted by plaintiff, counsel argues that a mandatory settlement conference was held on or around February 11, 2020. It is unclear which of the years under appeal relate to that conference.

[10] R. 8:6-1(b) anticipates an "exchange" of appraisals prior to trial.

cross-examination of the expert at trial. The cited rule relates solely to the procedure for the exchange of discovery, ensuring that the report that the expert and the report a party intends to rely upon at trial be clearly and unequivocally produced as such to the opposition.

Nonetheless it is clear that plaintiff produced the report, at defendant's insistence, to facilitate settlement discussions.[11] Thus plaintiff maintains that N.J.R.E. 408 prohibits its use by defendant. N.J.R.E. 408 provides

> [w]hen a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations … including offers of compromise or any payment in settlement of a related claim, is not admissible either to prove or disprove the validity or amount of the disputed claim. Such evidence shall not be excluded when offered for another purpose; and evidence otherwise admissible shall not be excluded merely because it was disclosed during settlement negotiations.
>
> [N.J.R.E. 408]

Defendant counters, however, that it does not intend to utilize the report for any purpose prohibited by the referenced rule. Instead, defendant argues that it intends to utilize the report solely for the purposes of impeaching the credibility of the expert's testimony due to discrepancies in the conclusions reached by the expert in that report versus the report that plaintiff intends to utilize at trial. See N.J.R.E. 607 (any party may examine the witness and introduce extrinsic evidence relative to the issue of credibility). Defendant asserts that the expert's inconsistent statements in the initial report are appropriate for impeachment purposes and bear on the expert's credibility. Hartz Mountain Development Co. v. Secaucus Town, 16 N.J. Tax 474, 482 (App. Div. 1997) (citing Skibinski v. Smith, 206 N.J. Super. 349, 353 (App. Div. 1985)). Thus, defendant

---

[11] It is unclear if plaintiff's production of a report relating solely to the value of the subject property as of October 1, 2017 (and thus relating solely to its value for the 2018 tax year) was intended to support its demands for all years under appeal. Nonetheless the report relates solely to the 2018 tax year.

argues that the report is not protected by N.J.R.E. 408, as defendant intends to use it, not for the purpose of proving the amount/value of the subject property, but for impeachment purposes.[12]

The court concurs with defendant that it may use the prior inconsistent report to impeach plaintiff's expert witness. It may be that an expert revises an opinion based on data unknown to him or her at the time of the initial report or for other reasons not known to him or her at the time of the preliminary report. Defendant is entitled to cross-examine the expert to learn those reasons. Plaintiff is not bound by the initial report, nor is the court required to determine that a conclusion different from the final report constitutes a factor of significance. Ibid.

Accordingly, the court finds defendant may use the preliminary report for the limited purpose of cross-examination of the plaintiff's expert. This is based on the court's finding that the preliminary report is subject to the protection of N.J.R.E. 408 but that defendant has demonstrated the preliminary report will be used for an admissible purpose. The report may not be utilized to prove the value of the subject property in contravention of N.J.R.E. 408.

Conclusion

For the above reasons, the plaintiff's motion to preclude the use of the preliminary report by defendant is denied.

Very truly yours,

/s/ Kathi F. Fiamingo

Kathi F. Fiamingo, J.T.C.

---

[12] Notably, the court in Hartz Mountain did not indicate the purpose of the prior inconsistent report referred to in that matter, nor did it comment on the propriety of the use of that inconsistent report for impeachment purposes and instead confirmed that use.